FILED
 2012 Aug-17  PM 12:11
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **PHILLIP L. ROBERSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **3:11-cv-02824-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Phillip Roberson ("Roberson") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

## I. Procedural History

Roberson filed his applications for Title II Disability Insurance Benefits and Supplemental Security Income on January 21, 2008, alleging a disability onset

date of June 2, 2006. (R. 24). After the SSA denied his application, Roberson requested and received a hearing on September 2, 2009. (R. 39-70). At the time of the hearing, Roberson was 53 years old with a high school diploma. (R. 39, 91, 117). Roberson has not engaged in substantial gainful activity since June 2, 2006, R. 26), due to congenital myotonia, emphysema, chronic obstructive pulmonary disease ("COPD"), osteoporosis, and back problems, (R. 112). His past relevant work included work as a draftsman and a resident assistant. (R. 44-46, 61).

On September 30, 2009, the ALJ denied Roberson's claims, finding that Roberson is capable of performing past relevant work as a draftsman and residential assistant, (R. 32), and that Roberson has a residual functional capacity ("RFC") to perform sedentary work, (R. 30). On June 13, 2011, the Appeals Council refused to grant review. (R. 1-6). Roberson then filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

Turning now to the ALJ's decision, the court notes that, initially, the ALJ determined that Roberson has not engaged in substantial gainful activity since June 2, 2006, and therefore met Step One of the five step analysis. (R. 26). The ALJ acknowledged that Roberson's combination of COPD, cervical disc bulge, congenital myotonic syndrome, and mild degenerative disc disease met Step Two. *Id*. The ALJ proceeded to the next step and found that Roberson did not satisfy Step Three since his impairments or combination thereof neither met nor equaled the requirements for any listed impairment. (R. 29). Although she answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that Roberson has the RFC

> to perform sedentary work . . . except [Roberson] can lift/carry 10 pounds frequently, 25 pounds occasionally; sit, stand, walk six of eight hours each; sit/stand option-no more than half in one position; limited pushing and pulling; no manipulative, postural, visual, communicative or environmental limitations.

(R. 30). Further, the ALJ held that Roberson is capable of performing his past relevant work as a draftsman and residential assistant. (R. 32). Accordingly, the ALJ determined that Roberson is not disabled. (R. 33); *see also McDaniel*, 800 F.2d at 1030.

## V. Analysis

The court turns now to Roberson's contentions that the ALJ's determination

is not based on substantial evidence and that the ALJ failed to apply the proper legal standards.  Doc. 8 at 1.  Specifically, Roberson contends that the ALJ's RFC findings are internally inconsistent and that the weight the ALJ assigned to the physicians' opinions is not based on substantial evidence.  *Id*. at 5-12.  The court addresses each contention below.

### A.     *The ALJ's Residual Functional Capacity Findings are Internally Consistent*

Roberson raises several contentions of error related to the RFC.  First, Roberson asserts that the "ALJ's hypothetical posed to the vocational expert (VE) does not match the [RFC] in the decision which was for sedentary work as defined except that [Roberson] can lift 10 pounds frequently, 25 pounds occasionally; sit, stand, walk 6 of 8 hours each, sit/stand option no more than half in one position; limited push pulling; no manipulative, postural, visual, communicative or environmental limitations."  Doc. 8 at 6.  Specifically, Roberson contends that the "ALJ's RFC findings reflect a purported decrease in exertional level but with increased lifting, omission of postural, manipulative and environmental limitations from the RFC as posed to the VE."  *Id.*  While Roberson is correct that the RFC differs from the hypothetical the ALJ presented to the VE,[1] Roberson overlooks

---

[1] The hypothetical the ALJ posed required the VE to consider a claimant that

could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about six hours, sit with normal breaks six hours in an eight hour work day, push and

that the ALJ is not obligated to rely on the VE in assessing a claimant's RFC. In fact, "testimony of a [VE] is only required to determine whether the claimant's residual functional capacity permits him to do other work *after* the claimant has met his initial burden of showing that he cannot do past work." *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (emphasis added). Put differently, based on the evidence, if the ALJ concludes that the claimant is capable of performing his past relevant work, testimony from a VE is unnecessary. *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990).

This is precisely what the ALJ did here – i.e., based on the medical

> pull limited in upper extremities, postural limitations, occasionally climbing ramps or stairs, no climbing ladders, ropes or scaffolds, reaching, handling and fingering occasional, no visual or communicative limitations, environmental avoid concentrated cold, heat, humidity, no unprotected heights, no operation of heavy machinery . . . . limitation of only able to sit, stand or walk no more than one half hour at a time, with a sit, stand option.

(R. 62-63). For such an individual, the VE testified that "[b]ased on the hypothetical posed, this would allow for the capacity to perform the past relevant work as both detailer [i.e., drafter] and resident manager as he descried the work, which is part time." (R. 62). In contrast to the hypothetical, in making her RFC determination, the ALJ found that Roberson can

> perform sedentary work . . . except [Roberson] can lift/carry 10 pounds frequently, 25 pounds occasionally; sit, stand, walk six of eight hours each; sit/stand option-no more than half in one position; limited pushing and pulling; no manipulative, postural, visual, communicative or environmental limitations.

(R. 30). The RFC is supported by substantial evidence, including the May 1, 2008, Physical RFC Assessment conducted by the Disability Examiner. (R. 598-605). The ALJ's RFC tracked the Physical RFC Assessment except for the lifting restrictions, which the ALJ lowered favorably for Roberson. *Id*.

evidence, which includes a Physical RFC Assessment performed on May 1, 2008, by Disability Examiner Lorene Henderson, (R. 598), the ALJ found that Roberson can perform his past relevant work as a draftsman and residential assistant. (R. 32). As shown in Section B, *infra,* substantial evidence supports the ALJ's findings. In fact, Roberson is not alleging that the ALJ erred in finding that Roberson can perform his past relevant work. Rather, Roberson contends that the RFC is inconsistent with the hypothetical posed to the VE. Doc. 8 at 6. However, because the ALJ ultimately found that Roberson can perform his past relevant work, the ALJ had no obligation to rely on the VE's testimony. *See Lucas*, 918 F.2d at 1573 n.2. In other words, that the hypothetical posed to the VE does not precisely match the ALJ's RFC findings is immaterial.

Second, Roberson contends that the ALJ committed error because the "VE never directly stated that Plaintiff could return to his past relevant work as a drafter.[2] The ALJ reported only that the VE 'appeared' at the hearing. The ALJ did not even report any VE testimony as to classification of Plaintiff's past work, merely finding that he could go back to it." Doc. 8 at 7. Additionally, Roberson alleges the "reliability of the VE's response is questionable based on the restriction of reaching, handling, and fingering, (corresponding to gross and fine

---

[2] Based on the hypothetical, the VE stated that Roberson can perform other drafting jobs such as: "architectural drafter, landscape drafter, castings drafter, detailer, [and] assistant drafter." (R. 63).

manipulation) to occasional." *Id.* Again, the ALJ did not have to place the same limitations posed to the VE in Roberson's RFC determination because the ALJ found that Roberson could perform his past relevant work. As such, the ALJ did not have to include in her opinion what the VE stated at the hearing. Indeed, the ALJ made no reference to the VE's testimony in her opinion, which suggests that she did not rely on the VE's testimony. *See generally* (R. 24-33). This is not surprising because, ultimately, the responsibility for assessing the RFC falls on the ALJ rather than the VE. 20 C.F.R. § 416.946. Accordingly, the ALJ committed no error in finding that Roberson could return to his past work as a draftsman.

Third, Roberson asserts that the "ALJ's RFC findings are not based on substantial evidence because the RFC itself is not readily interpretable." Doc. 8 at 7. Specifically, Roberson asserts the "ALJ found in the body of her decision that [Roberson] can perform work of a light exertional level . . . . [However,] [i]n her RFC findings the ALJ found that [Roberson] can perform sedentary work . . . . The ALJ immediately followed up with a qualifier – except that he can lift 10 pounds frequently and 25 pounds occasionally, which exceeds the lifting requirements even for light work, let alone sedentary." *Id*. at 7-8. Roberson is correct that the ALJ stated that Roberson can perform sedentary work in her RFC and later stated that "the evidence suggests that [Roberson] is limited, but is able to perform the

work of a light exertional level." (R. 30, 32). However, the ALJ's error, if any, is harmless because it is clear from the record that the ALJ intended for Roberson to perform sedentary work with exceptions. Indeed, the ALJ stated clearly that Roberson has the RFC to perform sedentary work, except that he can "lift/carry 10 pounds frequently, 25 pounds occasionally; sit, stand, walk six of eight hours each; [and a] sit/stand option . . . ." (R. 30). Moreover, the ALJ's finding that Roberson "is limited, but is able to perform work of a light exertional level" is the only reference to light work in the ALJ's opinion and occurred in the last paragraph of the ALJ's analysis under Step Three, *id.*, suggesting that it was a simple mistake. *See generally Rivera v. Comm'r of Soc. Sec.*, No. 6:08-cv-1720-Orl-GJK, 2010 WL 680784, *3 (M.D. Fla. Feb. 24, 2010) (The court held that the "ALJ's reference to light work appears to be a typographical error because the ALJ determined that the Claimant's RFC was for sedentary work [and] [t]he . . . referenced text is the only reference to light work in the ALJ's opinion."). Furthermore, the ALJ's sedentary RFC with exceptions is not contradicted by Roberson's current work and, in fact, Roberson's past relevant work as a draftsman and residential assistant are both classified as sedentary work. (R. 61-62, 65).

 Fourth, Roberson asserts that the ALJ erred by failing to clarify what she

meant by "half" in the sit/stand option: "sit/stand option – no more than half in one position." (R. 30); doc. 8 at 8. Roberson asserts that if "half of the available 8 workday hours in any one function, taking standing and walking together this would limit being on one's feet to 4 hours and sitting to 4 hours." Doc. 8 at 8. This assertion is undermined by the record which shows clearly that the ALJ found that Roberson can only "sit, stand, walk six of eight hours each" day. (R. 30). In fact, this reference to six hours preceded the reference to "no more than half" suggesting that the half is related to the six hours instead of the eight hours as Plaintiff suggests. In any event, because the ALJ stated without any equivocation that Roberson can only "sit, stand, [and] walk six of eight hours each" day, the court agrees with the Commissioner that the "half" in the sit/stand option was a typographical error. (R. 30, 46-47).

Fifth, Roberson notes that the "Ruling does not contemplate a sit/stand option in the context of medium work or work lifting greater than 20 pounds." Doc. 8 at 8. This argument is also unavailing because Roberson points to nothing that states his past relevant work cannot accommodate a sit/stand option. Notably, when asked at the hearing how much time he spends sitting or standing as a residential assistant, Roberson stated that "it varies because I can't stand or sit for long periods of time . . . . Half an hour at a time is about without really getting hurt

bad is all I can go." (R. 47). This response suggests, of course, that he has control over how long he sits and stands on that job. Likewise, Roberson has control over how long he sits or stands on his drafting job since he performs it from home. (R. 45).

Finally, Roberson contends that "the ALJ found pushing/pulling to be 'limited'[, but] [s]he did not state to what degree, whether frequent or occasional, or with which extremities, upper, lower, or both." Doc. 8 at 9. The omission is harmless because the ALJ's RFC determination is still sufficiently detailed to support the ALJ's finding that Roberson can perform his past relevant work.

**B.    *The ALJ's Findings Assigning Weight to the Physician's Opinion is Based on Substantial Evidence***

Roberson's other contention of error is related to the weight the ALJ assigned to Dr. Stephen E. Collier's ("Dr. Collier") opinion. Specifically, Roberson claims the "ALJ gave great weight to the purported opinion of [Roberson's] treating physician, Dr. Collier in 2006 that [Roberson's] level of pain was adequate to allow him to be gainfully employed. In fact [the ALJ] afforded this 'opinion' greater weight than that of the consultative physician who examined [Roberson] in April 2008." Doc. 8 at 9.

In light of Roberson's contentions, the court must review Dr. Collier's

treatment notes to see if they support Roberson or the ALJ. In that regard, the court notes that on January 24, 2006, Roberson visited Dr. Collier "with a history of congenital myotonic syndrome, causing chronic pain and muscle spasticity." (R. 411). Roberson had no chest pain, shortness of breath, fever, chills, sweats, joint pain, or further headaches. *Id*. Additionally, Roberson appeared well-developed, in no acute distress, with a regular heart rate, and clear lungs. *Id.* Roberson returned to Dr. Collier a month later, on February 21, 2006, again with a history of congenital myotonic syndrome and with no changes to his anxiety and nocturnal myoclonus. (R. 408). However, Dr. Collier noted that the "intensity and frequency of [Roberson's] symptoms are managed pretty well" and that Roberson had no chest pain, shortness of breath, fever, chills, sweats, joint pain, or headaches. *Id.* Roberson returned a month later, on March 20, 2006, during which Dr. Collier found no changes to Roberson's chronic generalized fatigue, malaise, and weakness. (R. 406). Dr. Collier found also that Roberson had no chest pain, acute distress, shortness of breath, respiratory, or GI or GU complaints, but that Roberson had a mildly positive bilateral straight leg raise test and moderate paraspinal spasm and tenderness at L3-S1. *Id.*

      The next month, on April 17, 2006, Dr. Collier noted that the intensity and frequency of Roberson's symptoms remained unchanged and that Roberson's pain

control was reasonably adequate. (R. 402). Once again, Roberson had no chest pain, shortness of breath, or acute distress. *Id*. Roberson again had a mildly positive bilateral straight leg raise test and moderate paraspinal spasm and tenderness at L3-S1. *Id.* Six weeks later, on May 31, 2006, Roberson visited Dr. Collier with a history of hypertension and had an unremarkable physical examination despite Roberson's increased complaints of anxiety. (R. 400). Roberson had four more visits to Dr. Collier, beginning on June 15, 2006, when he presented with a diagnosis of congenital myotonic syndrome, causing chronic pain and muscle spasticity. (R. 399). Dr. Collier noted no changes to Roberson's chronic generalized fatigue, malaise, and weakness, and opined that Roberson's current level of pain control is "reasonably adequate to allow him to be employed." *Id*. Roberson returned on July 13, 2006, during which Dr. Collier found again that Roberson's level of pain control was adequate, a decrease in the intensity and frequency of Roberson's symptoms, and no acute distress. *Id.* The third visit occurred almost a month later, when on August 9, 2006, Dr. Collier noted that Roberson's pain control was still reasonably adequate and that Roberson had no new complaints. (R. 397). The last visit documented in the record occurred on September 6, 2006, during which Dr. Collier opined again that Roberson's level of pain control was adequate to allow for gainful employment

and that Roberson had no new complaints. (R. 396).

 1. **Failure to Rely on Consultive Examination**

Roberson takes issue with the ALJ's reliance on Dr. Collier's opinion and contends that the ALJ should have given greater weight instead to the consulting physician Dr. M. Clarke Woodfin ("Dr. Woodfin"), who opined that because of Roberson's back pain, "he can't lift and carry more than 5 to 10lbs . . . can't sit longer than 10 to 15 minutes, can't be on his feet longer than 10 to 15 minutes." (R. 577). Moreover, Dr. Woodfin acknowledged that Roberson has a problem with myotonia congenita because it took Roberson up to one minute to straighten his fingers and use them in a normal fashion during a grip strength test. (R. 579). According to Roberson, the ALJ "failed to adequately explain why [Dr. Woodfin's] opinion should not be valid or why a statement made by [Roberson] within three months of [the] onset date two years earlier should take precedence . . . ." Doc. 8 at 9-10.

The court disagrees with Roberson's assertion because Dr. Woodfin's examination entries actually undermine Roberson's contentions. For example, Dr. Woodfin noted that Roberson appeared alert, pleasant, and cooperative during the examination, that Roberson sat for 25 minutes without getting up and moving around, that Roberson "[e]quivocally acts like someone with back pain" but used

no assistive device, rose slowly from sitting, sat down in a normal fashion, moved about the room without apparent physical limitations, and sat on the examination table without difficulty. (R. 578). Notably, Dr. Woodfin stated that "[o]n the table [Roberson] goes from sitting to supine to sitting by contracting the abdominal musculature, not by turning to one side to left himself up or down with the arms as someone with a bad back problem might do." *Id*. Critically, by Roberson's own admission, Dr. Woodfin conducted a pain-free examination. *Id*. Moreover, Dr. Woodfin opined that Roberson can prevent his back problems: "This would seem to be an avoidance-type back; e.g., if he avoids frequent bending and heavy lifting he should get along fairly well." (R. 579). Based on this court's review of the record, contrary to Roberson's contentions, Dr. Woodfin's findings do not support Roberson's claim that he is disabled.

As to Roberson's contention that the ALJ "[f]ailed to adequately explain why [Dr. Woodfin's] opinion should not be valid or why a statement made by [Roberson] within three months of onset two years earlier should take precedence . . . .," doc. 8 at 10, the ALJ specifically stated that she found Dr. Collier's opinion "consistent with the record as a whole. The opinion of Dr. Collier is based on regular and continuing treatment of [Roberson]. The undersigned finds no substantive evidence inconsistent with the assessment of Dr. Collier." (R. 32).

The ALJ then stated that she "considered the opinion of Dr. Woodfin and gives it non-controlling weight. The opinion of Dr. Woodfin is based on a one time examination of the claimant." *Id*. Therefore, assigning "significant weight" to Dr. Collier's opinion is not evidence of error because, in determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [she] received." 20 C.F.R. § 404.1527. Furthermore, "the ALJ may reject any contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). In fact, it is well established that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 416.927(c)(2) (Under the Regulations, "[g]enerally we give more weight to the opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of your medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings or from reports of individual examinations, such as consultative examinations."). Critically, Roberson failed to present any "good cause" to show why he claims Dr. Collier's opinion should not have received substantial or considerable weight.

### 2. Alleged Improper Reliance on Treating Physician

Roberson alleges next that the "problem with the ALJ's analysis is that the 'opinion' on which she relied was not an express opinion by [Dr. Collier] at all but rather, a statement on September 6, 2006, within the 'subjective' part of the notes, which may reasonably be attributed to [Roberson] rather than [Dr. Collier] . . . ." Doc. 8 at 11. Additionally, Roberson contends that "[e]ven if [the opinion] could be counted as an opinion, it would be an inadequate statement on which to rely in order to derive an RFC." *Id.* These contentions are also unavailing. The September 6, 2006, opinion specifically stated, in part, that Roberson's "level of pain control is adequate to allow him to be gainfully employed." (R. 396). Moreover, as the Commissioner stated, "[e]ven if the statement at issue were [sic] not considered Dr. Collier's opinion, the ALJ had no reason to discount [Roberson's] own admission that he could work." Doc. 9 at 13. Furthermore, again the ALJ gave Dr. Collier's opinion significant weight because it was consistent with the record as a whole. Thus, Roberson is incorrect that the ALJ relied solely on Dr. Collier's opinion to derive the RFC. To the contrary, she considered the record as a whole.

### 3. Alleged Failure to Consider Acute Pancreatitis

Roberson contends next that the evidence accounting for his pain due to

acute pancreatitis superseded Dr. Collier's opinion and that "for some reason the ALJ did not consider [the pancreatitis] important enough to report." Doc. 8 at 12. Roberson is incorrect because the ALJ specifically noted that "[w]hile the claimant was hospitalized on several occasions from June 2008 to October 2008 for acute pancreatitis, there is no evidence in the record that the claimant has had any other symptoms or problems related to this. Therefore, this impairment does not pose any significant limitations on [Roberson's] ability to perform work related activities and is non-severe." (R. 28). In other words, the ALJ committed no error because she considered Roberson's pancreatitis and found that it did not render him disabled.

### 4. Alleged Failure to Consider Age, Education, and Work Experience

Finally, as to Roberson's contentions that "ALJ's RFC findings are further not based on substantial evidence because she did not take into account the age, education and vocational factors as required," doc. 8 at 12, the court notes that the ALJ only has to consider the claimant's age, education, and work experience in decisions where she finds that a claimant cannot return to past relevant work. 20 C.F.R. 404.1520(f)-(g). Again, here, the ALJ found that Roberson can, in fact, perform his past relevant work. Therefore, the ALJ committed no error.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Roberson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  The final decision of the Commissioner is, therefore, **AFFIRMED**.  A separate order in accordance with this memorandum of decision will be entered.

**Done** the 17th day of August, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE